UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| KEIONA S. WASHINGTON | CIVIL ACTION |
|---|---|
| VERSUS | NO: 08-3682-SS |
| WACKENHUT CORPORATION | |

## ORDER

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Rec. doc. 22)

**GRANTED**

  The plaintiff, Keiona S. Washington ("Washington"), filed a petition in state court alleging employment discrimination. Rec. doc. 1 (Attachment). The defendant, The Wackenhut Corporation ("Wackenhut"), removed the case to federal court. The parties consented to proceed before a Magistrate Judge. Rec. doc. 18. Wackenhut filed a motion for summary judgment. Rec. doc. 22.

  Wackenhut provides security services at the Space and Naval Warfare System Center in New Orleans ("SPAWAR") facility. Washington was employed as a custom protection officer by Wackenhut at this facility from July 3, 2006 through July 19, 2007 when she was terminated. Washington alleges that: (a) she experienced discrimination based on her gender, female (failure to promote), and her race, African American (disparate treatment); (b) she was terminated in retaliation for reporting this discrimination; and (c) she experienced a hostile work environment. Rec. doc. 1 (Attachment). For the reasons described below, the motion is granted.

1.      Fed. R. Civ. P. 56(b).

Washington contends that Wackenhut's motion is premature. She urges in an affidavit that she requires additional discovery to present facts in opposition to her motion for summary judgment. Pursuant to Fed. R. Civ. P. 56(f), "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable . . . discovery to be undertaken; or (3) issue any just order." Id. Washington seeks additional time for the following discovery: (1) interrogatories; (2) depositions of Wackenhut employees concerning job postings; and (3) requests for production of: (a) documents identified in the motion for summary judgment; (b) policies on admittance of police cars to the facility; (c) personnel files of all supervisory staff assigned to the facility; and (d) records of any discrimination claims against Wackenhut at the facility at which Washington was employed. In Cormier v. Pennzoil, 969 F.2d 1559 (5th Cir. 1992), the Fifth Circuit held that:

> To obtain a Rule 56(f) continuance, the nonmovant must present specific facts explaining how postponement of a ruling on the motion will enable him to rebut the movant's showing of the absence of a genuine issue of fact.

Id. at 1561 (citations omitted). See also Claus v. Gyorkey, 674 F.2d 427, 436 (5th Cir. 1982) (a party opposing a motion for summary judgment is under a duty to act diligently); and Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc., 568 F.2d 1074, 1078 (5th Cir. 1978) (appellants made no showing of cause for their failure to begin discovery and they had sufficient time to do so before hearing).

Washington has not demonstrated that she was unable to present facts essential to justify her opposition. She urges that the need for this discovery could not be anticipated until she received

Wackenhut's motion for summary judgment. Rec. doc. 25 at 9. The fallacy in this argument can be illustrated with one example. Wackenhut's employment manual provided that one of the grounds for termination was, "[b]ringing or allowing unauthorized individuals, relatives, or friends on post." Rec. doc. 22 (Exhibit B). On January 3, 2007, Washington was issued a reprimand that she "allowed unauthorized personnel access to a government facility." Rec. doc. 22 (Exhibit F). When the reprimand was issued, Washington responded that her husband came to drop her children off to her and a supervisor said the visit was too long. Id. In her opposition memorandum, Washington reports that: (1) her husband, a Jefferson Parish deputy sheriff, came to visit her in a marked police car; (2) the visit took about twenty minutes; and (3) she believed Wackenhut's policy permitted police in official vehicles to come onto the facility.[1] At least since January 3, 2007 Washington understood that Wackenhut contended that even though her husband was a police officer in a police car, his presence violated the rule against allowing unauthorized relatives on the post. Washington did not have to wait until Wackenhut served its motion to understand that she would be required to rebut Wackenhut's contention that her husband was not authorized to be on the post.

Notwithstanding Washington's belief that Wackenhut's policies contradicted the position it took in reprimanding her, she made no effort to discover information to support her belief. There is no evidence that Washington ever sought any discovery from Wackenhut. The case was removed to federal court on June 10, 2008. Washington had more than nine months to initiate discovery

---

[1] Washington's statement of disputed material facts provides that, "plaintiff believes her husband was authorized because he is a police officer and was in a police vehicle." Rec. doc. 25 (Attachment at 2).

before Wackenhut filed its motion for summary judgment. Her failure to do so demonstrates a complete lack of diligence. She has not demonstrated any excuse for the delay.

Further, the discovery deadline was April 17, 2009. Rec. doc. 21. Washington cannot proceed with the discovery described in the Rule 56(f) affidavit without an extension of the discovery deadline. Pursuant to Fed. R. Civ. P. 16(B)(4), a scheduling order may be modified only for good cause. Washington has not demonstrated good cause for modification of the discovery deadline. See S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003).

Washington's request that resolution of Wackenhut's motion for summary judgment be delayed while she conducts the discovery described in her affidavit is therefore denied.

2.  Summary judgment standard.

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith

4

Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

In <u>Fierros v. Texas Dept. of Health</u>, 274 F.3d 187 (5th Cir. 2001), the Fifth Circuit cautioned that summary judgment is not favored in claims of employment discrimination and that the Supreme Court in <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000), emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, which are jury functions, not those of a judge. <u>Fierros</u>, 274 F.2d at 190-91.

3. <u>The hostile work environment claim</u>.

Wackenhut urges that it is entitled to judgment on Washington's hostile work environment claim because Washington failed to raise the claim in her EEOC charge of discrimination.[2] The September 20, 2007 charge indicates that Washington complained about discrimination based on race, sex and retaliation. The entire description of the claim in the charge is as follows:

> Disciplinary action was taken against me on December 29, 2006, for not wearing my uniform hat. I was disciplined on January 24, 2007, for not making a security check of the outside parking lot. On June 7, 2007, I reported to Steve Guillory what I believe was racial and sexual discrimination on the job. I was given a disciplinary coaching on June 8, 2007, for taking pictures of what I believed to be discriminatory activities at the job site. I was denied promotion or not considered for promotion to lieutenant on several occasions. All of the positions were given to White males who had less seniority than I had. I was discharged on July 19, 2007. The reason given for my discharge was that I abandoned my post. This incident occurred on the day a water spout was near the workplace. There was a lack of communication regarding what to do in that situation.

---

[2] Washington's opposition does not make a specific response to this part of Wackenhut's motion for summary judgment.

> I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my sex, female, my race, Black, and in retaliation for complaining about racial and sex discrimination.

Rec. doc. 22 (Exhibit M). In her petition, however, she alleges that Wackenhut's acts "created a continuing hostile environment. . . ." Rec. doc. 1(Attachment at 2).

As a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust her administrative remedies. Randel v. United States Dep't of Navy, 157 F.3d 392, 395 (5th Cir.1998). A judicial complaint that fails to exhaust administrative remedies is properly subject to dismissal. Hoffman v. Boeing, 596 F.2d 683, 685 (5th Cir.1979). Only those grounds asserted in the complaint which were raised in the administrative process may be considered. Id. A court may review claims not specifically raised in an EEOC complaint if they are like or related to the allegation made in the EEOC complaint. "A claim of race discrimination, however, does not encompass hostile work environment claims." Lawrence v United Airlines, Inc., 2002 WL 1489536, *4 (N.D. Tex.).

Washington did not allege the presence of a hostile work environment in her EEOC charge. To permit her to seek judicial relief for a hostile work environment claim without first affording the EEOC an opportunity to resolve the issue with Wackenhut administratively would undermine the administrative role in Title VII. See Ray v. Freeman, 626 F.2d 439, 442 (5th Cir. 1980), cert. denied, 450 U.S. 997, 101 S.Ct. 1701. Because Washington failed to raise the hostile work environment claim in the EEOC charge, she failed to exhaust her administrative remedies. Wackenhut is entitled to summary judgment on this claim.

4. <u>Has Washington met the requirements for filing a La. R.S. 23:303 claim</u>?

Wackenhut contends that Washington did not make a good faith effort to resolve the dispute prior to filing suit. Pursuant to Section 303© of the Louisiana Employment Discrimination Law ("LEDL"),

> A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action . . ., and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.

La. Rev. Stat. Ann. § 23:303©. The filing of an EEOC charge satisfies the notice requirement. <u>Johnson v. Coca-Cola Enterprises, Inc</u>., 2006 WL 2873474, *5 (W.D. La). The statute also requires that both parties engage in good faith settlement efforts. <u>Id</u>. Washington's petition alleges that she filed a complaint with the EEOC and after conciliation efforts were not productive, the EEOC issued its letter authorizing her to sue. Rec. doc. 1 (Attachment at 3). On a motion for summary judgment the moving party must meet the initial burden of demonstrating that there is no genuine issue of material fact. <u>Engstrom v. First National Bank of Eagle Lake</u>, 47 F.3d 1459, 1463 (5th Cir. 1995). Wackenhut does not present any evidence that there were no conciliation efforts, that Washington failed to make any effort to settle the claim or that Wackenhut attempted to settle but Washington refused to respond. Wackenhut's statement of undisputed facts is silent on the issue of settlement negotiations prior to the filing of the suit. Wackenhut has not met its initial burden on this claim. The burden did not shift to Washington to produce evidence demonstrating the existence of a genuine issue for trial. Wackenhut is not entitled to a dismissal of Washington's LEDL claim for failing to meet the prerequisites of such a claim.

5.   Gender discrimination claims.

Washington alleges that she experienced gender discrimination because: (a) she was not given the opportunity for promotion; (b) promotions were only given to males; and © only males were hired as supervisors. Rec. doc. 1 (Attachment).

Wackenhut demonstrates that Washington could not identify any documents, witnesses or facts to support her claim that her gender was a factor in the failure to promote her.[3] Without such direct evidence, Washington is required to prove her claim of gender discrimination by circumstantial evidence. The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), must be applied. Under this three-part scheme, a plaintiff must first present a *prima facie* case of discrimination. For her gender discrimination claim, Washington satisfies this initial burden by demonstrating that: (1) she belongs to a protected group; (2) she was qualified for the position sought; (3) she suffered an adverse employment action; and (4) someone outside the protected class was given the position. Manning v. Chevron Chemical Co., LLC, 332 F.3d 874, 881 (5th Cir. 2003).

Wackenhut's statement of undisputed facts and Washington's responses regarding the promotion issue are:

No. 19.      Washington conceded that she had opportunities for promotion but felt she had been overlooked.

Response.    Plaintiff concedes that she was offered an assignment that would require her to make a two hour commute and to work at night. Defendant knew that plaintiff had small children and could [not] commute and work every night. Plaintiff believes that she

---

[3] Rec. doc. 22 (Exhibit A at 140-42). Exhibit A contains portions of Washington's December 17, 2008 deposition.

9

| | |
|---|---|
| | was offered an undesirable position that would have involved a transfer from defendant personnel and that defendant purposely withheld desirable opportunities from her. |
| No. 20. | Washington never submitted her resume for consideration for any of the available promotions during her employment. |
| Response. | Plaintiff was not given an opportunity to submit her resume. |
| No. 21. | Washington made clear to management that she was not interested in working evening/overnight shifts on the Westbank. |
| Response. | No response made by Washington. |
| No. 22. | New Lieutenants all started by working night shifts. |
| Response. | Plaintiff questions the veracity of the Pass-Down statement on which no. 22 is based. If she had accepted the transfer she would have had to commute for two hours as well. |
| No. 23. | During her employment, at least two females, Connie Jackson and Kalisala Chapman, were given promotions. |
| Response. | These were not promotions to Lieutenant. They were promotions to shift supervisors and were not done by her supervisors. |
| No. 24. | Washington acknowledges that during her employment, two of her supervisors were female: one a Pacific-Islander and one an African-American female. |
| Response | These individuals had already received their promotions by the time plaintiff began working and plaintiff believes that her supervisors had nothing to do with those promotions. |

Rec. docs. 22 and 25 (Attachments).

On July 18, 2007, or about two weeks after Washington began her employment, Wackenhut announced that five persons were promoted to shift supervisor, including two females. Kalisala Chapman and Connie Jackson were promoted to Lieutenant at $15.00 per hour. Rec. doc. 22

10

(Exhibit Q). Although the memorandum announcing the promotions refers to them as Lieutenants, Washington contends that these were not promotions to Lieutenant and they were only promoted to shift supervisors. Even if she is correct, the fact is that two women were promoted shortly after Washington began working for Wackenhut.

Preston Jones, the supervising officer for Wackenhut at SPAWAR stated in his affidavit that Washington "was offered a promotion by the Wackenhut New Orleans office, which would have required working a night shift on the Westbank of the Mississippi River, and that she declined that promotion because of her unwillingness to travel to/from the Westbank and/or work a night shift." Rec. doc. 22 (Exhibit O at 2). Washington concedes this to be true. See response to no. 19 above.

On February 26, 2007, Wackenhut issued a "Pass-Down" or an announcement of an opening for a Sergeant/Lieutenant at SPAWAR. Unlike the position on the Westbank, this was for an opening at the facility at which Washington was employed. Rec. doc. 22 (Exhibit P). The schedule for the position was Tuesday through Thursday, 2:00 p.m. through 10:15 p.m., and Friday and Saturday, 10:00 p.m. through 6:15 a.m. The announcement also states that:

> As of 2 March we will have an opening for a Sergeant/Lieutenant here at SPAWAR. On Friday night, you would be paid as a Lieutenant. This is a watch you will have to do until a spot comes up on the permanent Lieutenant shifts. Also, this would be for the purpose of training you and getting you ready for a permanent Lieutenant's spot. This is a promotional shift. This is where all Lieutenants have started out and then they have moved up the line. Any officers interested please contact your Lieutenant. The Lieutenants will make a decision and pass them up to me. So here is your chance at a Lieutenant's spot. Please contact your Lt. immediately.

Rec. doc. 22 (Exhibit P). Jones' affidavit states that Washington "never submitted her resume for consideration for any available promotions during her employment at the SPAWAR facility...." Rec.

doc. 22 (Exhibit O at 2). Washington questions the veracity of the February 26, 2007 announcement but presents no evidence to contradict it.

Wackenhut has presented evidence that: (1) within three weeks of Washington's employment at SPAWAR, two females were promoted to shift supervisors; (2) Washington was offered but turned down a promotion to a position on the Westbank; (3) on February 27, 2007, an opening for Sergeant/Lieutenant position at SPAWAR was announced; (4) Washington did not apply for the opening; and (5) all persons who began working as Lieutenant started out on the night shift. This demonstrates that Washington was given the opportunity for promotion and promotions were given to females. Pursuant to Rule 56, the burden shifted to Washington to produce evidence demonstrating the existence of a genuine issue for trial regarding her claim that she experienced gender discrimination. She has not done so. Wackenhut's motion for summary judgment will be granted as to her claims for gender discrimination under federal and state law.[4]

6.  Race discrimination claims.

Washington alleges that she experienced discrimination based on her race, African-American. The acts of alleged discrimination include: (a) racially motivated public reprimands; (b) racially motivated disparate language; (c) racially motivated application of dress codes; and (d) she and another African-American employee were terminated for abandoning their post while white employees who abandoned their posts were not terminated. Rec. doc. 1 (Attachment at 2).

---

[4] The scope of Louisiana anti-discrimination law is same as that of Title VII. Aucoin v. Kennedy, 355 F.Supp.2d 830 (E.D. La. 2004) (Lemmon, J.)

Washington's claim of race discrimination is based on disparate treatment. She must satisfy the burden shifting test in McDonnell Douglas. She must first establish a *prima facie* case of discrimination. After doing so, the burden shifts to Wackenhut to produce evidence that Wackenhut's actions were taken for legitimate non-discriminatory reasons. If Wackenhut meets this burden, Washington is afforded the opportunity to demonstrate that an issue of material fact exists and the legitimate reasons offered by Wackenhut were not its true reasons but pretexts for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2106-09 (2000).

To establish a *prima facie* case of race discrimination for disparate treatment, Washington must provide evidence that she: (1) is a member of the protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) in the case of disparate treatment, others similarly situated were treated more favorably. Okoye v. The University of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir. 2001).

The public reprimands, the racially motivated disparate language, and application of dress codes are not adverse employment actions. Adverse employment actions involve hiring, granting leave, discharging, promoting or compensating. McCoy v. City of Shreveport, 492 F.3d 551, 559-60 (5th Cir. 2007). Washington cannot satisfy the second element required for a *prima facie* case as to these actions.

The only matter which involved an adverse employment action is the claim that she was terminated for abandoning her post while white employees who abandoned their posts were not terminated. Washington contends that Lieutenants Hoppin and Butler demonstrate disparate

13

treatment because both of them received reprimands for abandoning their posts. Wackenhut demonstrates that Hoppin was suspended and Butler was transferred.[5] Hoppin is an African-American. Rec. doc. 22 (Exhibit R). He is not outside the protected class. Washington may not use his treatment as evidence of her *prima facie* case.

Wackenhut contends that Washington cannot establish that Butler was treated more favorably than she. In Okoye, the Fifth Circuit stated that:

> [T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances, that is that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees.

245 F.3d at 514. Wackenhut urges that the circumstances are not nearly identical because: (1) Washington was a custom protection officer whereas Butler was a lieutenant; (2) Washington was assigned to the main gate which had specific orders requiring that she not leave until she was relieved in order to prevent unauthorized access to the facility; and (3) Washington's disciplinary record was worse than that of Butler. In Okoye, the focus of the inquiry into whether nearly identical circumstances are present is on the misconduct. The plaintiff in Okoye was terminated for assaulting a co-worker. She sought to compare herself to three physicians who were not fired. The Fifth Circuit noted that the "physicians, however, never allegedly assaulted a co-worker." Id. at 514. Washington alleges that she was terminated for abandonment of her post, while Butler was not terminated for abandonment of his post. Instead, he was written up and transferred. The misconduct at issue, abandonment of their posts, was very similar. Washington established her *prima facie* case of race discrimination for disparate treatment.

---

[5] No. 29 of Wackenhut's statement of undisputed facts. Rec. doc. 22 (Attachment).

14

Pursuant to McDonnell Douglas, the burden shifts to Wackenhut to produce evidence that Washington was terminated for a legitimate non-discriminatory reasons. It is undisputed that Washington abandoned her post and such action may be cause for immediate termination under Wackenhut's policies. Rec. doc. 22 (Exhibit B). Wackenhut has satisfied its burden at this point.

Washington is then afforded the opportunity to demonstrate that an issue of material fact exists and the legitimate reason offered by Wackenhut was not its true reason but a pretext for discrimination. In Reeves, the Supreme Court said:

> In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.

129 S.Ct at 2110.

Washington began working for Wackenhut on July 3, 2006. She reports that on December 29, 2006, she was disciplined for not wearing a hat on duty. She contends it blew off in the wind. The reprimand notes that other officers were subjected to the same wind conditions, but were able to wear their hats. Rec. doc. 22(Exhibit C). On December 29, 2006, she was reprimanded for allowing her husband to come onto the facility in the police car. Washington had ample opportunity to provide evidence that Wackenhut authorized such persons to enter the facility. She thereafter was reprimanded for making a verbal threat arising out of the first two incidents. Rec. doc. 22 (Exhibit G). Washington's evidence on these incidents does not demonstrate discriminatory treatment.

On January 24, 2007, Washington was reprimanded for not making a perimeter check during the rain. She acknowledges that she did not check the outside parking lot because she was waiting

15

for the rain to let up. Rec. doc. 25 at 4. She does not present any evidence that it was proper for her to refrain from making the perimeter check because of rain.

The SPAWAR site guidelines provide that taking photographs on the site was not authorized unless approved by the Public Affairs Office and the Physical Security Division. Rec. doc. 22 (Exhibit I). Washington acknowledges that she took photos with her digital telephone. She contends this was done to secure evidence that white officers were not properly attired. She was reprimanded for taking photos.[6] Rec. doc. 25 at 4. She does not address the fact that the activity, taking photos, was proscribed unless specifically authorized.

Washington contends that on July 19, 2007: (1) she and another African-American female officer were in a small glass booth at the front gate; (2) there was a report of what was thought to be a tornado; (3) there were warnings to take cover; (4) she and the other officer tried but could not communicate with a supervisor; (5) they sought cover in the main building; (6) while the gate was unmanned, six cars entered; and (7) she and the other officer were terminated. Rec. doc. 25 at 4. The disciplinary notice states that, "[t]hey left the post to see a water spout and left the gate unattended. She did not take a radio." Rec. doc. 22(Exhibit J). She was cited for abandoning the post without proper relief. Id. Washington has not submitted an affidavit or any other evidence from the person who was in the booth with her. There is no claim of discrimination by the co-worker.

Washington testified that neither racist nor sexist derogatory remarks were made directly to her. Rec. doc. 22 (Exhibit A at 176). She did testify that a co-employee, Jackie Holmes, reported

---

[6] Washington has not offered the photos in support of her claims.

hearing such remarks.[7] Washington has not presented any testimony from Holmes. Washington's testimony of Holmes' reports of what others said is hearsay. Fed. R. Evid. 801. Deposition testimony which is not admissible as evidence at a trial may not be considered on a motion for summary judgment. 10A Wright, Miller and Marcus, Federal Practice and Procedure §2272 (3d ed. 1998).

Reviewing all the evidence as a whole, there is not sufficient evidence to find that Wackenhut's asserted justification for Washington's termination is false. Washington has not raised a genuine issue of material fact that Wackenhut discriminated against her in terminating her employment. Wackenhut's motion for summary judgment will be granted as to her claims for race discrimination under federal and state law.

7.  Retaliation claim.

On June 7, 2007, Washington reported to a Wackenhut representative, Steve Guillory, that she was experiencing race and sex discrimination on the job. Rec. doc. 22 (Exhibit M). She was terminated on July 19, 2007. Washington alleges that her termination was in retaliation for reporting racial and sex discrimination. Rec. doc. 1 (Attachment at 2). Pursuant to Title VII, it is unlawful to discriminate against any employee because the employee opposed an unlawful practice. 42 U.S.C. § 200e-3(a). To establish a *prima facie* case of retaliation, Washington must demonstrate that: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action.

---

[7] A description of the remarks may be found at Rec. doc. 22 at 21-22.

Roberson v. Alltel Information Services, 373 F.3d 647, 655 (5th Cir. 2004). The first two elements are present.

Wackenhut contends that Washington cannot establish the causal link between the protected activity and her termination. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Armstrong v. City of Dallas,, 997 F.2d 62, 67 (5th Cir.1993). "[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." Swanson v. General Services Admin., 110 F.3d 1180, 1188, n.3 (5th Cir. 1997); and Roberson, 373 F.3d at 655 (emphasis added). Washington was terminated more than forty days after her complaint of employment discrimination. This is not sufficient to provide the causal connection required for her *prima facie* case of discrimination.

Even if she made a *prima facie* case of retaliation, Wackenhut presented a legitimate non-discriminatory reason for her termination, and a review of all of the evidence has not demonstrated that there is sufficient evidence to find that Wackenhut's reason for terminating her was a pretext. Wackenhut's motion for summary judgment will be granted as to her claims for retaliation under federal and state law.[8]

---

[8] Wackhenhut urges that Washington's request for damages for mental anguish should be dismissed. Because Wackenhut's motion for summary judgment will be granted on all of Washington's causes of action under federal and state law, it is not necessary to consider her request for damages for mental anguish.

For the foregoing reasons, IT IS ORDERED that Wackenhut's motion for summary judgment (Rec. doc. 22) is GRANTED.

New Orleans, Louisiana, this 22nd day of April, 2009.

**SALLY SHUSHAN**
**United States Magistrate Judge**